DAVID L. MORENOFF, DC BAR NO. 479480
ACTING GENERAL COUNSEL
ROBERT H. SOLOMON, DC BAR NO. 395955
SOLICITOR
HOLLY E. CAFER, DC BAR NO. 495844
ATTORNEY
FEDERAL ENERGY REGULATORY COMMISSION
888 FIRST STREET, N.E.
WASHINGTON, D.C. 20426
TELEPHONE: (202) 502-8485
FACSIMILE: (202) 273-0901
EMAIL: holly.cafer@ferc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **FEDERAL ENERGY REGULATORY COMMISSION,** | )<br>)<br>) |
| **Plaintiff,** | )    No. 1:13-cv-141<br>) |
| v. | )    **COMPLAINT**<br>) |
| **IDAHO PUBLIC UTILITIES COMMISSION,** | )<br>)<br>) |
| **Defendant.** | )<br>) |

### I.    SUMMARY

1.    The Federal Energy Regulatory Commission (FERC) brings this civil action to

enforce a federal statute, the Public Utility Regulatory Policies Act of 1978 (PURPA),

*see* 16 U.S.C. § 824a-3, and FERC's regulations implementing PURPA, *see* 18 C.F.R.

pt. 292.

2. As demonstrated below, Defendant Idaho Public Utilities Commission (Idaho Commission) issued a series of orders rejecting power purchase agreements between certain electric utilities and certain wind power production facilities afforded particular rights under PURPA. In so doing, the Idaho Commission advanced reasons that FERC, in carrying out its statutory responsibilities to issue and enforce regulations under PURPA, repeatedly has found violate both PURPA and FERC's regulations implementing PURPA.

3. PURPA is designed to encourage the development of alternative energy sources, including, as relevant here, wind power production facilities. *See* 16 U.S.C. § 824a-3(a).

4. FERC is charged with establishing regulations to implement PURPA, and specifically the requirement that electric utilities must purchase power from qualifying power production facilities (Qualifying Facilities or QFs). 16 U.S.C. § 824a-3(a)(1). State regulatory authorities, in turn, are charged with implementing FERC's regulations. 16 U.S.C. § 824a-3(f).

5. Four separate owners of unconstructed wind power facilities, which are certified as Qualifying Facilities, petitioned FERC to find the Idaho Commission in violation of PURPA and FERC's regulations, and to bring an enforcement action to correct the violations.

6. In response to each of these four petitions, FERC issued declaratory orders finding that the Idaho Commission's actions and policies violate PURPA and FERC's PURPA regulations.

7. This enforcement action arises from the two most recent FERC declaratory orders, in which FERC announced its intent to bring this enforcement action – the first of its kind – under PURPA section 210(h)(2)(A), 16 U.S.C. § 824a-3(h)(2)(A).

8. Notwithstanding FERC's four declaratory orders issued over the course of more than one year, the Idaho Commission has not taken voluntary corrective measures.

9. With this action, FERC asks that this Court direct the Idaho Commission to bring its practices into compliance with PURPA and FERC's PURPA regulations.

## II. JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to PURPA section 210(h)(2)(A), 16 U.S.C. § 824a-3(h)(2)(A), which authorizes FERC, acting under its general enforcement authority in section 314 of the Federal Power Act, 16 U.S.C. § 825m, to bring an enforcement action in a United States district court against a State regulatory authority to enjoin violations of and ensure compliance with PURPA and FERC's PURPA regulations.

11. Venue in this Court is proper because the Idaho Commission is located in this district and is the State regulatory authority responsible for implementing PURPA in this district. The Idaho Commission's acts and practices that form the basis for the violations alleged in this complaint occurred in this district.

## III. THE PARTIES

12. FERC is an independent federal regulatory agency with the statutory responsibility and authority, *inter alia*, to issue, 16 U.S.C. § 824a-3(a), and to enforce, 16 U.S.C. § 824a-3(h), regulations under PURPA.

13. Defendant Idaho Commission is the State regulatory authority with ratemaking jurisdiction with respect to the sale of retail electric energy in Idaho and the responsibility to carry out certain PURPA-related functions, including, under PURPA section 210(f), 16 U.S.C. § 824a-3(f), the responsibility to implement FERC's PURPA regulations.

### IV.  THE STATUTORY AND REGULATORY FRAMEWORK

14. Congress enacted PURPA in 1978 as part of a package of legislation designed to address a nationwide energy crisis. *See FERC v. Mississippi*, 456 U.S. 742, 745, 750 (1982).

15. In section 210(a) of PURPA, 16 U.S.C. § 824a-3(a), Congress required FERC to promulgate "such rules as it determines necessary to encourage cogeneration and small power production"[1] development. *See generally* 18 C.F.R. pt. 292.

16. "Congress believed that increased use of these sources of energy would reduce the demand for traditional fossil fuels," but it recognized that "traditional electricity utilities were reluctant to purchase power from, and to sell power to, the nontraditional facilities," and this reluctance impeded the development of such facilities. *FERC v. Mississippi*, 456 U.S. at 750.

17. Accordingly, Congress specifically directed FERC to issue rules requiring electric utilities to purchase electric energy from such facilities. 16 U.S.C. § 824a-3(a)(1).

---

[1] A cogeneration facility produces both electric energy and steam or some other form of useful energy, such as heat. 16 U.S.C. § 796(18)(A). A small power production facility uses biomass, waste, or renewable resources (such as wind, water, or solar energy) to produce no more than 80 megawatts of electric power. 16 U.S.C. § 796(17)(A).

18.     In its duly promulgated regulations, FERC interpreted section 210(a) of PURPA, 16 U.S.C. § 824a-3(a), as imposing on electric utilities an obligation to purchase all electric energy and capacity made available from qualifying cogeneration and small power production facilities.  *See* 18 C.F.R. § 292.303.

19.     FERC's regulations provide Qualifying Facilities with an option to sell capacity and energy to electric utilities pursuant to a "legally enforceable obligation" with the rate determined at the time the obligation is incurred.  *See* 18 C.F.R. § 292.304(d)(2).

20.     In promulgating 18 C.F.R. § 292.304(d)(2), FERC explained that it used the term "legally enforceable obligation" in order to prevent an electric utility from circumventing the mandatory purchase obligation by refusing to negotiate or enter into a contract.[2]

21.     FERC also has issued regulations establishing criteria, including capacity size and fuel use, and procedures for small power production facilities and other facilities to be certified as Qualifying Facilities.  *See* 18 C.F.R. §§ 292.203(a), 292.204.

22.     Section 210(f) of PURPA, 16 U.S.C. § 824a-3(f), requires State regulatory authorities and non-regulated electric utilities to implement FERC's PURPA regulations.

23.     Section 210(h)(2)(A) of PURPA, 16 U.S.C. § 824a-3(h)(2)(A), permits FERC to enforce the requirement of PURPA section 210(f) – requiring implementation of FERC's

---

[2] *Small Power Production and Cogeneration Facilities; Regulations Implementing Section 210 of the Public Utility Regulatory Policies Act of 1978*, Order No. 69, FERC Stats. & Regs. ¶ 30,128, at 30,880, *order on reh'g*, Order No. 69-A, FERC Stats. & Regs. ¶ 30,160 (1980), *aff'd in part and vacated in part*, *Am. Elec. Power Serv. Corp. v. FERC*, 675 F.2d 1226 (D.C. Cir. 1982), *rev'd in part*, *Am. Paper Inst., Inc. v. Am. Elec. Power Serv. Corp.*, 461 U.S. 402 (1983).

PURPA regulations – against any State regulatory authority or non-regulated electric utility.

24. As provided in PURPA section 210(h)(2)(A), 16 U.S.C. § 824a-3(h)(2)(A), FERC's PURPA regulations are treated as rules enforceable under section 314 of the Federal Power Act, 16 U.S.C. § 825m.

25. Section 210(h)(2)(B) of PURPA, 16 U.S.C. § 824a-3(h)(2)(B), permits any Qualifying Facility, among others, to petition FERC to bring an enforcement action under section 210(h)(2)(A), 16 U.S.C. § 824a-3(h)(2)(A).

26. Where FERC refuses to bring an enforcement action within 60 days of the filing of such a petition, the petitioner may, under section 210(h)(2)(B) of PURPA, 16 U.S.C. § 824a-3(h)(2)(B), bring its own enforcement action directly against a State regulatory authority in the appropriate United States district court.

## V. FACTS

27. The Idaho Commission's actions at issue here arise out of Idaho Commission proceedings, and subsequent petitions to FERC seeking relief from the Idaho Commission's actions in those proceedings.

### A. IDAHO COMMISSION PROCEEDINGS

28. On November 5, 2010, various Idaho electric utilities, including Idaho Power, petitioned the Idaho Commission to initiate an investigation into certain PURPA issues related to the rates those utilities pay for electric power provided by Qualifying Facilities (i.e., avoided cost rates). The utilities specifically asked the Idaho Commission to reduce the facility size eligible for published avoided cost rates.

6

29.     On December 3, 2010, in response to the utilities' petition, the Idaho Commission issued an order commencing an investigation into the issues presented and giving notice that any decision on the facility size eligibility cap would be effective on December 14, 2010.[3]

30.     On February 7, 2011, the Idaho Commission issued an order temporarily reducing the facility size eligibility cap for wind and solar projects to receive published avoided cost rates, from an average maximum capacity of 10 megawatts in any given month,[4] down to 100 kilowatts, effective after December 14, 2010, pending completion of the Idaho Commission's investigation.[5]

31.     As described in more detail below, Murphy Flat Power, LLC, Murphy Flat Energy, LLC, Murphy Flat Mesa, LLC, and Murphy Flat Wind, LLC (collectively, Murphy Flat) and Grouse Creek Wind Park, LLC and Grouse Creek Wind Park II, LLC (together, Grouse Creek) engaged in separate negotiations concerning power purchase agreements with Idaho Power prior to the Idaho Commission's initiation of its investigation, and each ultimately signed agreements with Idaho Power.

---

[3] *In the Matter of the Joint Petition of Idaho Power Co., Avista Corp., and PacifiCorp dba Rocky Mountain Power to Address Avoided Cost Issues and to Adjust the Published Avoided Cost Rate Eligibility Cap*, Order No. 32131, Case No. GNR-E-10-04 (Idaho Commission Dec. 3, 2010).

[4] While each of the Murphy Flat and Grouse Creek wind projects has a nameplate (theoretical) capacity of greater than 10 megawatts, each has an actual average monthly output of less than 10 megawatts.

[5] *In the Matter of the Joint Petition of Idaho Power Co., Avista Corp., and PacifiCorp dba Rocky Mountain Power to Address Avoided Cost Issues and to Adjust the Published Avoided Cost Rate Eligibility Cap*, Order No. 32176, Case No. GNR-E-10-04 (Idaho Commission Feb. 7, 2011).

32. On June 8, 2011, in a series of individual orders addressing Murphy Flat,[6] Grouse Creek,[7] and other Qualifying Facilities, the Idaho Commission rejected Murphy Flat's, Grouse Creek's, and other QFs' agreements with Idaho electric utilities because the proposed projects exceed the new 100 kilowatt eligibility cap for published avoided cost rates.

33. In rejecting both sets of agreements, the Idaho Commission adopted and relied on "a bright line rule: a Firm Energy Sale Agreement/Power Purchase Agreement must be executed, i.e., signed by both parties to the agreement, prior to the effective date of the change in eligibility criteria," December 14, 2010, in order to qualify for published avoided cost rates. Murphy Flat June 8, 2011 Order at 9; *see also* Grouse Creek June 8, 2011 Order at 10.

## MURPHY FLAT

34. In November and December 2010, Murphy Flat, which proposes to construct three wind power projects with nameplate capacity of 25 megawatts each, engaged in negotiations concerning power purchase agreements (Murphy Flat Agreements) with Idaho Power.

---

[6] *In the Matter of the Application of Idaho Power Company for a Determination Regarding the Firm Energy Sales Agreement Between Idaho Power and Murphy Flat Mesa, LLC*, *Murphy Flat Energy, LLC*, *and Murphy Flat Wind, LLC*, Order No. 32255, Case Nos. IPC-E-10-56, IPC-E-10-57, IPC-E-10-58 (Idaho Commission June 8, 2011) (Exhibit A hereto).

[7] *In the Matter of the Application of Idaho Power Company for a Determination Regarding the Firm Energy Sales Agreement Between Idaho Power and Grouse Creek Wind Park, LLC, and Grouse Creek Wind Park II, LLC*, Order No. 32257, Case Nos. IPC-E-10-61, IPC-E-10-62 (Idaho Commission June 8, 2011) (Exhibit B hereto).

35.     Murphy Flat signed the Murphy Flat Agreements on December 13, 2010.  Idaho Power signed the Agreements on December 15, 2010.

36.     The Murphy Flat Agreements provide for Murphy Flat to sell electric energy to Idaho Power at published avoided cost rates.

37.     On December 16, 2010, Idaho Power submitted the Murphy Flat Agreements to the Idaho Commission for acceptance.

38.     On June 8, 2011, as described above, the Idaho Commission rejected the Murphy Flat Agreements based on its bright line rule requiring execution by both parties prior to December 14, 2010 in order for a QF larger than 100 kilowatts to obtain published avoided cost rates.

39.     Subsequently, on August 16, 2012, Murphy Flat petitioned the Idaho Commission for modification of the June 8, 2011 order rejecting its agreements in light of a FERC order issued October 4, 2011, addressing other QFs, which found that the bright line rule violates PURPA and FERC's PURPA regulations.

40.     On October 12, 2012, the Idaho Commission denied, and rejected as time-barred, Murphy Flat's request for modification.

## GROUSE CREEK

41.     Between February and December 2010, Grouse Creek, which proposes to construct two wind power projects with nameplate capacity of 21 megawatts each, engaged in negotiations concerning power purchase agreements (Grouse Creek Agreements) with Idaho Power.

9

42. During those negotiations, on November 8, 2010, Grouse Creek filed a complaint against Idaho Power with the Idaho Commission, accusing Idaho Power of obstructing the negotiation of the power purchase agreements.

43. Grouse Creek signed the Grouse Creek Agreements on December 20, 2010. Idaho Power signed the Agreements on December 28, 2010.

44. The Grouse Creek Agreements provide for Grouse Creek to sell electric energy to Idaho Power at published avoided cost rates.

45. On December 29, 2010, Idaho Power submitted the Grouse Creek Agreements to the Idaho Commission for acceptance. Grouse Creek did not pursue the November 8, 2010 complaint.

46. On June 8, 2011, as described above, the Idaho Commission rejected the Grouse Creek Agreements based on its bright line rule requiring execution by both parties prior to December 14, 2010 in order for a QF larger than 100 kilowatts to obtain published avoided cost rates.

47. Grouse Creek immediately sought reconsideration of the June 8, 2011 order rejecting its agreements, which the Idaho Commission denied on July 27, 2011.[8]

48. Grouse Creek appealed to the Idaho Supreme Court, which subsequently granted a stipulated motion filed by Grouse Creek, the Idaho Commission, and Idaho Power to

---

[8] *In the Matter of the Application of Idaho Power Company for a Determination Regarding the Firm Energy Sales Agreement for the Sale and Purchase of Electric Energy Between Idaho Power Company and Grouse Creek Wind Park, LLC and Grouse Creek Wind Park II, LLC*, Order No. 32299, Case Nos. IPC-E-10-61, IPC-E-10-62 (Idaho Commission July 27, 2011).

suspend the appeal and remand the case back to the Idaho Commission in light of a FERC order issued October 4, 2011, addressing other QFs, which found that the Idaho Commission's bright line rule violates PURPA and FERC's PURPA regulations.

49. On September 7, 2012, the Idaho Commission again rejected the Grouse Creek Agreements, holding that a QF may obtain PURPA rates either by entering into a contract with the utility or, if the utility is failing to negotiate or enter into a contract, by filing a meritorious complaint with the Idaho Commission.[9]

50. In the proceedings leading to the September 7, 2012 order, the Idaho Commission staff took the position that Grouse Creek incurred a legally enforceable obligation prior to December 14, 2010, and is entitled to published avoided cost rates. *Id*. at 8.

51. The Idaho Commission held that Grouse Creek did not have a legally enforceable obligation with Idaho Power prior to December 14, 2010, notwithstanding Grouse Creek's November 8, 2010 complaint, because it chose to enter into a contract, and the contract was not executed prior to December 14, 2010. *Id*. at 16-17.

52. Grouse Creek has appealed the Idaho Commission's September 7, 2012 order to the Idaho Supreme Court,[10] where the case remains pending.

---

[9] *In the Matter of the Application of Idaho Power Company for a Determination Regarding the Firm Energy Sales Agreement for the Sale and Purchase of Electric Energy Between Idaho Power Company and Grouse Creek Wind Park, LLC (10-61) and Grouse Creek Wind Park II, LLC (10-62)*, Order No. 32635 at 12, Case Nos. IPC-E-10-61, IPC-E-10-62 (Idaho Commission Sept. 7, 2012) (Exhibit C hereto).

[10] *Grouse Creek Wind Park, LLC v. Idaho Pub. Util. Comm'n*, No. 39151-2011 (Idaho) (filed Oct. 19, 2012).

### B. FERC PROCEEDINGS

53. FERC has now issued four separate declaratory orders finding that the Idaho Commission's "bright line rule" and policies imposing unlawful conditions precedent to the formation of a legally enforceable obligation violate PURPA and FERC's PURPA regulations.

54. In the first two cases,[11] FERC examined factual circumstances similar to those presented by Murphy Flat and Grouse Creek: the Qualifying Facilities and the electric utilities negotiated power purchase agreements and the QFs executed the agreements before December 14, 2010, but the electric utilities executed the agreements on or after December 14, 2010.

55. In both of those cases, FERC issued a declaratory order finding the Idaho Commission's bright line rule violates PURPA and FERC's PURPA regulations, but exercised its discretion not to initiate an enforcement action. *Cedar Creek* PP 29-30; *Rainbow Ranch* PP 22-23.[12]

### MURPHY FLAT

56. On September 25, 2012, Murphy Flat filed with FERC a Petition for Enforcement under PURPA section 210(h)(2)(B), 16 U.S.C. § 824a-3(h)(2)(B), requesting FERC to

---

[11] *Cedar Creek Wind, LLC*, 137 FERC ¶ 61,006 (2011) (*Cedar Creek*) (Exhibit D hereto); *Rainbow Ranch Wind, LLC*, 139 FERC ¶ 61,077 (2012) (*Rainbow Ranch*) (Exhibit E hereto).

[12] P refers to the paragraph number in FERC orders.

initiate an enforcement action against the Idaho Commission to overturn the Idaho Commission's orders rejecting Murphy Flat's Agreements with Idaho Power.

57. The Idaho Commission and Idaho Power filed responses in opposition to Murphy Flat's petition.

58. On November 20, 2012, in response to Murphy Flat's petition, FERC issued a Notice of Intent to Act and Declaratory Order. *Murphy Flat Power*, *LLC*, 141 FERC ¶ 61,145 (2012) (*Murphy Flat*) (Exhibit F hereto). FERC found the Idaho Commission's actions inconsistent with PURPA and FERC's PURPA regulations, and gave notice of its intent to initiate an enforcement action pursuant to PURPA section 210(h)(2)(A).

59. In *Murphy Flat*, FERC adopted the same reasoning detailed in *Cedar Creek* and followed in *Rainbow Ranch*, identifying the Idaho Commission's violation of PURPA and FERC's PURPA regulations.

60. A Qualifying Facility has the option to sell power to an electric utility pursuant to a "legally enforceable obligation." *Cedar Creek* P 32 (citing 18 C.F.R. § 292.304(d)).

61. A legally enforceable obligation "may be incurred before the formal memorialization of a contract to writing." *Murphy Flat* P 24 (quoting *Cedar Creek* P 36).

62. As described in FERC's rulemaking adopting the term "legally enforceable obligation," use of that term is intended to prevent utilities from circumventing the PURPA mandatory purchase requirement by refusing to enter into a contract, or delaying the execution of a contract to obtain a later and lower rate. *Cedar Creek* P 32 (citing Order No. 69, FERC Stats. & Regs. ¶ 30,128 at 30,880); *see also Murphy Flat* P 24 (citing *Cedar Creek* P 36).

63. FERC held that "a QF, by committing itself to sell to an electric utility, also commits the electric utility to buy from the QF; these commitments result either in contracts or in non-contractual, but binding, legally enforceable obligations." *Murphy Flat* P 24 (quoting *Cedar Creek* P 32).

64. In *Murphy Flat*, as in *Cedar Creek* and *Rainbow Ranch*, the QFs engaged in formal negotiations to enter into power purchase agreements in November and December 2010. *Murphy Flat* P 25.

65. Idaho Power sent final, executable agreements to Murphy Flat on December 13, 2010, and Murphy Flat executed the agreements the same day. *Id*. P 10.

66. The Idaho Commission's new rules concerning eligibility for avoided cost rates went into effect December 14, 2010, and Idaho Power executed the agreements on December 15, 2010. *Id*. P 25.

67. Upon review of the Idaho Commission's orders, FERC held that the bright line rule, by "mandating that a legally enforceable obligation may be created only by a fully-executed contract," makes a fully-executed contract a condition precedent to a legally enforceable obligation. *Murphy Flat* P 24 (citing *Cedar Creek* P 35).

68. Ordinarily, states have discretion to determine the date on which a legally enforceable obligation is incurred. They must, however, do so in compliance with FERC's regulations. *Cedar Creek* P 35.

69. Where, as here, "a state limits the methods through which a legally enforceable obligation may be created," by requiring a fully-executed contract, "the state's limitation

is inconsistent with PURPA, and [FERC's] regulations implementing PURPA." *Cedar Creek* P 35.

70. FERC also rejected the Idaho Commission and Idaho Power's procedural objections, explaining that Murphy Flat's petition to FERC, under PURPA section 210(h)(2)(B), 16 U.S.C. § 824a-3(h)(2)(B), concerning the Idaho Commission's implementation of PURPA regulations, invokes a separate federal right, and is neither precluded by any state proceedings (or lack thereof) nor subject to any statutory or regulatory deadline. *Murphy Flat* PP 27-28.

71. Based on the "Idaho Commission's continued reliance on its 'bright line rule' in its June 8, 2011 decision, despite [FERC's] orders in *Cedar Creek* and *Rainbow Ranch*," FERC announced its intent to go to federal district court to enforce PURPA and its PURPA regulations. *Murphy Flat* P 23.

## GROUSE CREEK

72. On January 15, 2013, Grouse Creek filed with FERC a Petition for Enforcement under PURPA section 210(h)(2)(B), 16 U.S.C. § 824a-3(h)(2)(B), requesting FERC to initiate an enforcement action against the Idaho Commission to overturn the Idaho Commission's orders rejecting Grouse Creek's Agreements with Idaho Power.

73. The Idaho Commission and Idaho Power filed responses in opposition to Grouse Creek's petition.

74. On March 15, 2013, in response to Grouse Creek's petition, FERC issued a Notice of Intent to Act and Declaratory Order. *Grouse Creek Wind Park*, *LLC*, 142 FERC ¶ 61,187 (2013) (*Grouse Creek*) (Exhibit G hereto). FERC again found the Idaho

15

Commission's actions inconsistent with PURPA and FERC's regulations, and, as in *Murphy Flat*, gave notice of its intent to initiate an enforcement action pursuant to PURPA section 210(h)(2)(A).

75. In *Grouse Creek*, FERC reiterated and adopted its findings as set forth in *Cedar Creek*, *Rainbow Ranch*, and *Murphy Flat*. *Grouse Creek* P 36.

76. In all four cases, the QFs engaged in formal negotiations to enter into power purchase agreements in November and December 2010. *Id*. P 37.

77. The QFs each unequivocally committed themselves to sell to the utilities prior to the December 14, 2010 effective date of the Idaho Commission's new eligibility rules, and all material terms of the agreements were established prior to that date. *Id*. P 37 & n.45.

78. FERC recognized that neither Grouse Creek nor Idaho Power executed the Grouse Creek Agreements until after December 14, 2010, but found this irrelevant because, as pointed out in *Cedar Creek*, *Rainbow Ranch,* and *Murphy Flat*, a legally enforceable obligation may exist regardless of the existence of, and prior to the signing of, a contract. *Id*. PP 38, 40.

79. FERC also addressed the Idaho Commission's additional requirement, in the September 7, 2012 order, that if an electric utility refuses to sign a contract with a QF, the QF must file a meritorious complaint with the Idaho Commission in order to secure a legally enforceable obligation. *Id*. P 40.

80. FERC found that this new reason for rejecting the Grouse Creek Agreements, invoked by the Idaho Commission after receiving FERC's orders in *Cedar Creek* and

*Rainbow Ranch*, also violates PURPA and FERC's PURPA regulations. *Grouse Creek* P 40.

81. A QF may seek state regulatory assistance to enforce a legally enforceable obligation, but this "does not mean that seeking such assistance is a necessary condition precedent to the existence of a legally enforceable obligation." *Id*. P 40.

82. Rather, FERC found that the Idaho Commission's requirement that a QF file a meritorious complaint in order to obtain a legally enforceable obligation would "unreasonably interfere with a QF's right to a legally enforceable obligation and also create practical disincentives to amicable contract formation." *Id*.

83. Based on the "Idaho Commission's reliance on its 'bright line rule' in its June 8[, 2011] decision and additional barriers to establishment of legally enforceable obligations in its September 7[, 2012] decision, despite [FERC's] orders in *Cedar Creek* and *Rainbow Ranch*," FERC announced its intent to go to federal district court to enforce PURPA and its PURPA regulations. *Id*. P 35.

## VI. VIOLATIONS OF PURPA AND FERC'S REGULATIONS

### UNLAWFUL CONDITIONS PRECEDENT TO LEGALLY ENFORCEABLE OBLIGATIONS

84. Plaintiff FERC re-alleges and incorporates by reference paragraphs 1 through 83 of this complaint.

85. Section 210(a) of PURPA, 16 U.S.C. § 824a-3(a), requires FERC to promulgate such rules as are necessary to encourage Qualifying Facilities to produce power and to require electric utilities to purchase power from such QFs.

86. FERC's duly promulgated regulations give QFs the right to sell electric energy to an electric utility pursuant to a legally enforceable obligation. 18 C.F.R. § 292.304(d)(2); *see also*, *e.g.*, *Grouse Creek* P 40.

87. As described in FERC's rulemaking adopting 18 C.F.R. § 292.304(d)(2), the term "legally enforceable obligation" is intended to prevent utilities from circumventing the PURPA mandatory purchase requirement by refusing to enter into a contract, or delaying the execution of a contract. *Cedar Creek* P 32 (citing Order No. 69, FERC Stats. & Regs. ¶ 30,128 at 30,880); *see also Grouse Creek* P 36; *Murphy Flat* P 24.

88. A legally enforceable obligation "can pre-date the signing" of a contract. *Grouse Creek* P 40; *see also Murphy Flat* P 24.

89. The Idaho Commission's June 8, 2011 orders invoke a bright line rule holding that a QF cannot incur a legally enforceable obligation in the absence of a fully-executed contract.

90. The Idaho Commission's bright line rule is inconsistent with and therefore violates PURPA and FERC's PURPA regulations, in particular 18 C.F.R. § 292.304(d) (allowing a QF the unqualified choice to sell pursuant to a legally enforceable obligation). *See Murphy Flat* P 25; *see also Grouse Creek* P 37; *Cedar Creek* PP 30, 37.

91. In addition, FERC regulations do not require that a QF file a meritorious complaint or otherwise seek state regulatory assistance to obtain a legally enforceable obligation. *Grouse Creek* P 40.

92. A QF may seek state regulatory assistance to enforce a legally enforceable obligation, but seeking such assistance and, in particular, filing a meritorious complaint

is not a necessary condition precedent to obtaining a legally enforceable obligation. *Id.* P 40.

93. To the contrary, FERC has interpreted its regulations as providing a QF, upon committing itself to sell to an electric utility, with the right to a legally enforceable obligation.[13] *Grouse Creek* P 40; *Murphy Flat* P 24.

94. The Idaho Commission's requirement that a QF file a meritorious complaint in order to secure a legally enforceable obligation – meritorious being entirely within the judgment of the Idaho Commission – unreasonably interferes with the QF's right to choose to sell its power to an electric utility pursuant to a legally enforceable obligation. *Grouse Creek* P 40.

95. Accordingly, the Idaho Commission's requirement that, in the absence of a fully-executed contract, a QF must file a meritorious formal complaint with the Idaho Commission in order to secure a legally enforceable obligation, is inconsistent with and therefore violates PURPA and FERC's PURPA regulations, in particular, 18 C.F.R. § 292.304(d). *See Grouse Creek* P 40.

---

[13] *See, e.g., JD Wind 1, LLC*, 129 FERC ¶ 61,148, at P 25 (2009) ("Under our regulations, [the QF] has the right to choose to sell pursuant to a legally enforceable obligation . . . ."); *see also Murphy Flat* P 24 ("a QF, by committing itself to sell to an electric utility, also commits the electric utility to buy from the QF; these commitments result either in contracts or in non-contractual, but binding, legally enforceable obligations") (quoting *Cedar Creek* P 32); *see also Grouse Creek* P 36 (same).

## VII.   RELIEF REQUESTED

WHEREFORE, FERC respectfully requests that this Court enter an order

(1)     finding, consistent with FERC's *Murphy Flat* and *Grouse Creek* orders, that the Idaho Commission's June 8, 2011 and September 7, 2012 orders violate PURPA and FERC's implementing regulations;

(2)     enjoining the Idaho Commission from imposing conditions precedent to the formation of legally enforceable obligations in a manner inconsistent with PURPA, FERC's regulations, and FERC's *Murphy Flat* and *Grouse Creek* orders; and

(3)     directing the Idaho Commission to issue such orders as are necessary and appropriate to give effect to the legally enforceable obligations otherwise rejected in the Idaho Commission's June 8, 2011 and September 7, 2012 orders.

Respectfully submitted,

David L. Morenoff
Acting General Counsel

Robert H. Solomon
Solicitor

*/s/ Holly E. Cafer*
Holly E. Cafer
Attorney
Federal Energy Regulatory Commission
888 First Street, N.E.
Washington, D.C. 20426
Telephone: (202) 502-8485
Facsimile: (202) 273-0901
holly.cafer@ferc.gov