# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| FEDERAL ENERGY REGULATORY COMMISSION, | Case No.: 1:13-cv-00141-EJL-REB |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER RE:** |
| vs. | **IDAHO POWER'S MOTION TO INTERVENE** <br> **(Docket No. 19)** |
| IDAHO PUBLIC UTILITIES COMMISSION, | |
| Defendant. | **FERC'S MOTION FOR LEAVE TO SUBMIT AMENDED COMPLAINT** <br> **(Docket No. 36)** |
| | **IPUC'S MOTION FOR PARTIAL STAY OF PROCEEDINGS PENDING DISPOSITION OF APPEAL TO IDAHO SUPREME COURT** <br> **(Docket No. 42)** |

Pending before the Court are: (1) Idaho Power's Motion to Intervene (Docket No. 19); (2) FERC's Motion for Leave to Submit Amended Complaint (Docket No. 36); and (3) IPUC's Motion for Partial Stay of Proceedings (Docket No. 42).  Having carefully considered the record and otherwise being fully advised, the undersigned enters the following Memorandum Decision and Order:

## I.  GENERAL BACKGROUND

Plaintiff, the Federal Energy Regulatory Commission ("FERC"), brings this civil action to enforce a federal statute – the Public Utility Regulatory Polices Act of 1978 ("PURPA") – and FERC's regulations implementing PURPA.  *See* Compl., ¶ 1 (Docket No. 1).  Generally

**MEMORANDUM DECISION AND ORDER - 1**

speaking, FERC alleges that Defendant Idaho Public Utilities Commission ("IPUC") issued a series of orders that improperly rejected power purchase agreements between certain electric utilities regulated by IPUC and certain "qualifying" wind power production facilities afforded particular rights under PURPA. *See id*. at ¶ 2. IPUC disagrees, contending that it appropriately declined to approve the power purchase agreements because they contained rates inconsistent with IPUC's PURPA regulations. *See* Answer, ¶¶ 5-6 (Docket No. 25) (citing Order Nos. 32664, 32299, & 32635, attached as Exs. 1-3 to Answer (Docket No. 25, Att. 1)).[1]

## II. DISCUSSION

### A. Idaho Power's Motion to Intervene (Docket No. 19)

#### 1. Intervention as of Right and Permissive Intervention: The Standards

FRCP 24 allows intervention by right or by permission. Intervention by right under FRCP 24(a)(2) requires that: (1) "the applicant must timely move to intervene"; (2) "the applicant must have a significantly protectable interest related to the property or transaction that is the subject of the action"; (3) the applicant must prove that "the disposition of the action may impair or impede" the applicant's ability to protect that interest; and (4) "the applicant's interest must not be adequately represented by existing parties." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003); *see also* Fed. R. Civ. P. 24(a)(2). In general, courts construe FRCP 24(a) liberally in favor of intervention. *See Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001). Moreover, the court's evaluation is "guided primarily by practical considerations," not technical distinctions. *See id*. Nonetheless, the "[f]ailure to satisfy any one

---

[1] A more comprehensive factual background is included later within this Memorandum Decision and Order, when addressing FERC's Motion for Leave to Submit Amended Complaint. *See infra*.

**MEMORANDUM DECISION AND ORDER - 2**

of the requirements is fatal to the application." *Perry v. Prop. 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

Where intervention as of right in unavailable, a party may still seek permissive intervention.  Under FRCP 24(b), "the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  The Rule also indicates that the court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  As with FRCP 24(a) intervention, the court should interpret the requirements broadly in favor of intervention.  *See United States v. Aerojet*, 606 F.3d 1142 (9th Cir. 2010) (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004)).

      2.    <u>Analysis: Idaho Power is Permitted to Intervene</u>

Relevant here, IPUC disapproved of specific power purchase agreements between Idaho Power and certain wind power production facilities.  *See* Mem. in Supp. of Mot. to Intervene, p. 2, n.1 (Docket No. 19, Att. 1).  In filing this action, FERC asks this Court to "direct[ ] IPUC to issue such orders as are necessary and appropriate to give effect to the legally enforceable obligations otherwise rejected in IPUC's . . . orders."  *See* Compl., p. 20, ¶ 3 (Docket No. 1).  According to Idaho Power, such a mandate "would explicitly and directly impact Idaho Power's rights by potentially requiring Idaho Power to purchase energy at standard, or published, avoided cost rates from projects in excess of the 100kW eligibility cap" – in essence, paying more for power from those projects than Idaho Power believes it is properly obligated to pay.  *See* Mem. in Supp. of Mot. to Intervene, pp. 3-4 (Docket No. 19, Att. 1) ("FERC's current action seeks to . . . forc[e] Idaho Power and its customers to pay wind developers previously effective standard,

**MEMORANDUM DECISION AND ORDER - 3**

or published, avoided cost rates that have been deemed unjust, unreasonable, and contrary to PURPA by IPUC.").  No party disputes this contention; likewise, no party opposes Idaho Power's attempted intervention.

Because Idaho Power is a party to the at-issue power purchase agreements rejected by IPUC, Idaho Power is not now obligated to purchase power from the qualifying wind power production facilities.  If FERC prevails here, that would change.  Therefore, Idaho Power has a significantly protectable interest at stake in this litigation – an interest that could be impaired if Idaho Power is not allowed to intervene.  *See id.* at pp. 15-17 ("FERC's claims and its success or failure could affect Idaho Power's obligations under the contracts at issue in this proceeding. . . . .  This suit clearly threatens the important interests of Idaho Power that only Idaho Power can adequately represent. . . . .  Idaho Power not only has an interest as a party to the prior agreements, it has an interest as a utility that would [be] subject to potential changes in policy.").

Moreover, no existing party currently speaks comprehensively to Idaho Power's interests.  FERC clearly doesn't; and IPUC, while more closely aligned with Idaho Power's position, is nonetheless a state regulatory agency with understandably different interests, different insights, and a different mission that, together, may uniquely impact the way it defends FERC's claims against it in particular.  *See id.* at p. 17 ("IPUC does not have a specific interest in the contractual terms of the power purchase agreements.  Further, Idaho Power provides unique insight as a regulated utility.  Indeed, neither IPUC nor FERC can provide the perspective of an electric utility that maintains the obligation to provide reliable and safe power.").  Again, no other party contests such arguments.

Finding no reason to disagree with these undisputed arguments in favor of Idaho Power's intervention in this proceeding, and recognizing Idaho Power's timely motion to do so and the

**MEMORANDUM DECISION AND ORDER - 4**

absence of any prejudice to the parties, the undersigned finds that Idaho Power's unopposed

Motion to Intervene (Docket No. 19) is properly granted under either FRCP 24(a)(2) or

24(b)(1)(B).

**B.      FERC's Motion for Leave to Submit Amended Complaint (Docket No. 36)**

       1.      <u>Amending Pleadings: The Standard</u>

FRCP 15(a)(2) provides that amendments to pleadings should be liberally granted in the

interests of justice.  The Rule States: "[A] party may amend its pleading only with the opposing

party's written consent or the court's leave" and "[t]he court should freely give leave when

justice so requires."  *See* Fed. R. Civ. P. 15(a)(2).  However, the right to amend is not absolute.

When determining whether amendments should be granted, the Court should consider "undue

delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies

by amendments previously allowed, undue prejudice to the opposing party by virtue of

allowance of amendment, futility of amendment, etc. . . . ."  *Foman v. Davis*, 371 U.S. 178, 182

(1962).  Prejudice to the opposing party is the most important factor for consideration.  *See*

*Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citing *Zenith Radio Corp. v.*

*Hazeltine Research Inc.*, 401 U.S. 321, 330-31 (1971)).

       2.      <u>Analysis: FERC is Permitted to Amend its Complaint</u>

FERC contends that IPUC violated PURPA in rejecting certain power purchase

agreements executed by (1) Murphy Flat Power, LLC, Murphy Flat Energy, LLC, Murphy Flat

Mesa, LLC, and Murphy Flat Wind, LLC (collectively "Murphy Flat"); and (2) Grouse Creek

Wind Park, LLC and Grouse Creek Wind Park II, LLC (collectively "Grouse Creek").  *See*

Mem. in Supp. of Mot. to Am., p. 2 (Docket No. 36, Att. 1) (citing Compl., ¶¶ 31, 58, & 74

(Docket No. 1)).  Now, through its proposed Amended Complaint, FERC "seeks to add factual

**MEMORANDUM DECISION AND ORDER - 5**

allegations that IPUC engaged in the same reasoning, resulting in the same alleged violations, when rejecting power purchase agreements executed by wind power production facility developers Rainbow Ranch Wind, LLC and Rainbow West Wind, LLC ([collectively] "Rainbow")." *See id.* In essence, owing to the alleged similarities between Murphy Flat, Grouse Creek, and Rainbow, FERC wants to consolidate all three factual backdrops into a single enforcement action against IPUC via its proposed Amended Complaint.

IPUC opposes FERC's proposed amendment for three reasons: (1) FERC cannot resurrect claims already precluded by Rainbow's failure to timely seek judicial review of IPUC's final order denying Rainbow's proposed power sales agreements; (2) FERC's claims relative to Rainbow are barred by the 42-day statute of limitations pursuant to Idaho Code § 61-627 and Idaho Appellate Rule 14(b); and (3) this Court has no jurisdiction to consider FERC's amended allegations under PURPA because this is not a proceeding to "implement" FERC's PURPA regulations. *See* Opp. to Mot. to Am., pp. 2-5, 14-19 (Docket No. 38).

a.      *Relevant Factual and Procedural Background*

•   **November 10, 2010:** Various Idaho electric utilities, including Idaho Power, petition IPUC to initiate an investigation into issues involving IPUC's administration of PURPA within Idaho. These utilities ask IPUC to reduce the facility size eligible for published avoided cost rates to all qualifying facilities. *See* Compl., ¶ 28 (Docket No. 1); Opp. to Mot. to Am., p. 7 (Docket No. 38).

•   **December 3, 2010:** IPUC issues a public Notice and Order (Order No. 32131), commencing an investigation concerning the request to reduce the eligibility cap, and giving notice that any decision on the facility size eligibility cap would be effective on December 14, 2010. *See* Compl., ¶ 29 (Docket No. 1); Opp. to Mot. to Am., p. 7 (Docket No. 38).

•   **December 14, 2010:** Effective date for lowering eligibility cap. Also, Idaho Power and Rainbow enter into their respective Firm Energy Sales Agreements (the "Agreements"). *See* Opp. to Mot. to Am., p. 8 (Docket No. 38). The Agreements state that they become effective upon IPUC's "approval of all terms and provisions hereof . . . ." *See id.* at pp. 8-9 (quoting ¶ 21.1 of Agreements, attached as Ex. 3 to Opp. to Mot. to Am. (Docket No. 38, Att. 1)).

**MEMORANDUM DECISION AND ORDER - 6**

- **December 16, 2010:** Idaho Power files two applications with IPUC, requesting acceptance or rejection of Agreements between Idaho Power and Rainbow.  *See* Proposed Am. Compl., ¶ 37 (Docket No. 36, Att. 3); Opp. to Mot. to Am., pp. 8-9 (Docket No. 38).

- **February 7, 2011:** IPUC issues an Order (Order No. 32176), formally concluding that the electric utilities made a "convincing case" to "temporarily reduce the eligibility cap for published avoided cost rates . . . for wind and solar only . . . ."  *See* Compl., ¶ 30 (Docket No. 1); Opp. to Mot. to Am., p. 8 (Docket No. 38). Accordingly, IPUC orders the temporary reduction in the eligibility cap for published avoided cost rates for wind and solar resources, effective December 14, 2010.  *See id.*  Rainbow did not seek reconsideration of Order No. 32176.  *See* Opp. to Mot. to Am., p. 8 (Docket No. 38).

- **June 8, 2011:** IPUC issues its final Order (Order No. 32256), disapproving the Agreements between Idaho Power and Rainbow (along with other qualifying facilities' agreements) because the Agreements were not fully executed before December 14, 2010.  *See* Compl., ¶¶ 32-33 (Docket No. 1); Proposed Am. Compl., ¶ 37 (Docket No. 36, Att. 3); Opp. to Mot. to Am., p. 9 (Docket No. 38); *see also* Order No. 32256, p. 8, attached as Ex. 4 to Opp. to Mot. to Am. (Docket No. 38, Att. 2) ("We find that it is not in the public interest to allow parties with contracts executed on or after December 14, 2010, to avail themselves of an eligibility cap that is no longer available.").

- **June 29, 2011:** Rainbow files a Petition for Reconsideration, asserting that IPUC's Order No. 32256 was unreasonable, erroneous, and not in conformity with the law. *See* Proposed Am. Compl, ¶ 39 (Docket No. 36, Att. 3); Opp. to Mot. to Am., p. 10 (Docket No. 38).

- **July 27, 2011:** IPUC issues an Order (Order No. 32300), denying Rainbow's Petition for Reconsideration because, again, the Agreements were not fully executed before December 14, 2010.  *See* Proposed Am. Compl., ¶ 39 (Docket No. 36, Att. 3); Opp. to Mot. to Am., p. 10 (Docket No. 38); *see also* Order No. 32300, p. 8, attached as Ex. 5 to Opp. to Mot. to Am. (Docket No. 38, Att. 2) ("Moreover, the final Order disapproving the Projects' Agreements was abundantly clear: 'in order for the 10 aMW eligibility cap to be available to wind and solar [qualifying facilities], the agreement must have been effective *prior* to December 14, 2010.'") (quoting Order No. 32256)).[2]

---

[2]  According to IPUC, Order No. 32300 "became final, conclusive, and not subject to collateral challenge" 42 days thereafter – September 7, 2011 – "when the time prescribed by Idaho law for appeal of that order expired without the filing of a notice of appeal.  *See* opp. to Mot. to Am., p. 10 (Docket No. 38).  Rainbow did not file any appeal before September 7, 2011. *See id.*

**MEMORANDUM DECISION AND ORDER - 7**

- **October 4, 2011:** FERC issues a Notice of Intent Not to Act and Declaratory Order concerning another qualifying facility (Cedar Creek Wind, LLC ("Cedar Creek")) that objected to IPUC's failure to approve a power sales agreement executed by a public utility after the December 14, 2010 effective date of IPUC's reduction in the eligibility cap applicable to published avoided cost rates. *See* Opp. to Mot. to Am., p. 11 (Docket No. 38). Therein, FERC concludes that IPUC's application of a "requirement that an executed contract was necessary to create a legally enforceable obligation in these circumstances is inconsistent with PURPA and IPUC's regulations implementing PURPA." *See Cedar Creek Wind, LLC*, 137 FERC P 61006, ¶ 37(Oct. 4, 2011)); *see also* Compl., ¶¶ 39 & 48 (Docket No. 1). FERC did not speak to whether a "legally enforceable obligation subject to IPUC's PURPA regulations" (between Cedar Creek and Rocky Mountain Power) separately existed. *See Cedar Creek Wind, LLC*, 137 FERC P 61006 at ¶ 38.

- **October 24, 2011:** IPUC and Cedar Creek file a stipulated motion with the Idaho Supreme Court (where Cedar Creek's appeal was pending) to suspend the appeal and remand the matter back to IPUC. *See* Opp. to Mot. to Am., p. 12 (Docket No. 38); *see also* Order No. 32386, 2011 WL 5142570 (Oct. 26, 2011) ("The parties maintained that there was good cause to suspend the appeal, primarily so they could consider a recent Order issued by FERC. The Motion noted that the temporary remand would allow IPUC to reconsider its Orders in light of the FERC Order; and provide the parties with an opportunity to settle the appeal.").

- **October 26, 2011:** IPUC grants IPUC and Cedar Creek's stipulated motion, finding in Order No. 32386 that it is appropriate to grant a further rehearing so that IPUC may reconsider its July 27, 2011 order. *See* Order No. 32386, 2011 WL 5142570. IPUC additionally finds that "it is reasonable and in the public interest to schedule two settlement conferences for the parties." *See id.* Finally, IPUC indicates that, in the event settlement cannot be reached, it "shall schedule further proceedings to determine whether a 'legally enforceable obligation' arose before Rocky Mountain Power and Cedar Creek executed their Power Purchase Agreements." *See id.*

- **December 21, 2011:** IPUC issues an Order (Order No. 32419), approving a settlement stipulation between Cedar Creek and Rocky Mountain Power. *See* Opp. to Mot. to Am., p. 12 (Docket No. 38). In doing so, IPUC acknowledges FERC's interpretation of PURPA requirements. *See* Order No. 32419, pp. 8-9, attached as Ex. 6 to Opp. to Mot. to Am. (Docket No. 38, Att. 2) ("This is the first time IPUC has reviewed the facts of this case for evidence regarding the existence of a legally enforceable obligation outside the express terms of the original five Agreements entered into by Rocky Mountain Power and Cedar Creek. . . . . Based upon the Parties' assertions in the Settlement Stipulation and our review of the record, we find that the record reveals that Cedar Creek had perfected a legally enforceable obligation no later than December 13, 2010. As such, Cedar Creek was entitled to

**MEMORANDUM DECISION AND ORDER - 8**

the published avoided cost rates available to 10 aMW QFs in effect as of December 13, 2010.").

• **March 1, 2012:** Rainbow petitions IPUC either to modify its reconsideration Order No. 32300 to provide for approval of the previously-rejected Agreements, or to approve the Agreements outright. *See* Opp. to Mot. to Am., pp. 10, n.11, & 13 (Docket No. 38).[3] Rainbow also files a PURPA section 210(h) petition with FERC, requesting that FERC initiate an enforcement action against IPUC to overturn IPUC's orders rejecting the Agreements or, alternatively, find that IPUC's orders rejecting the Agreements are inconsistent with the requirements of PURPA and IPUC's regulations implementing PURPA. *See id.* at p. 13 (characterizing petition to FERC as "based on a claim that Rainbow [was] entitled to the benefit of FERC's Cedar Creek order."); *see also* Proposed Am. Compl., ¶ 62 (Docket No. 36, Att. 3).

• **March 22, 2012:** IPUC responds to Rainbow's section 210(h) petition to FERC, stating that it does not dispute FERC's construction of 18 C.F.R. § 292.304(d). *See* IPUC Ans. to Rainbow Pet., p. 6, attached as Ex. 7 to Opp. to Mot. to Am. (Docket No. 38, Att. 2) ("FERC has already issued the construction of 18 C.F.R. § 292.304(d) on which Petitioner's rely in the Declaratory Order issued in *Cedar Creek Wind, LLC* . . . . IPUC does not dispute FERC's construction, and the Petition presents no occasion for FERC to reiterate that construction."); *see also* Proposed Am. Compl., ¶ 63 (Docket No. 36, Att. 3).

• **April 30, 2012:** FERC issues a Notice of Intent Not to Act and Declaratory Order in response to Rainbow's section 210(h) petition. *See* Opp. to Mot. to Am., pp. 13-14 (Docket No. 38); Proposed Am. Compl., ¶ 64 (Docket No. 36, Att. 3). Therein, FERC (1) gives notice that it declines to initiate an enforcement action against IPUC,[4] but (2) concludes that IPUC's June 8, 2011 order (Order No. 32256) rejecting Rainbow's Agreements is inconsistent with PURPA requirements and FERC's regulations implementing PURPA. *See id.*; *see also* 4/30/12 Order, ¶ 1, attached as Ex. H to Proposed Am. Compl. (Docket No. 36, Att. 11).

• **March 22, 2013:** FERC files the instant action against IPUC, requesting (as to Murphy Flat and Grouse Creek specifically) that this Court enter an order (1) finding that IPUC's orders violate PURPA and FERC's implementing regulations; (2)

---

[3] This case is currently pending before the IPUC. *See* Opp. to Mot. to Am., pp.10-11, n.11 (Docket No. 38). IPUC characterizes Rainbow's petition for modification of Order No. 32300 as an improper collateral attack on IPUC's earlier orders of June 8, 2011 and July 27, 2011. *See id.*

[4] Though giving notice that it did not intend to go to court to enforce PURPA on Rainbow's behalf, FERC nonetheless stated that Rainbow "may bring their own enforcement action against IPUC in the appropriate court." *See* 4/30/12 Order, ¶ 22, attached as Ex. H to Proposed Am. Compl. (Docket No. 36, Att. 11).

**MEMORANDUM DECISION AND ORDER - 9**

enjoining IPUC from imposing conditions precedent to the formation of legally enforceable obligations; and (3) directing IPUC to issue such orders as are necessary and appropriate to give effect to legally enforceable obligations.  *See* Compl., p. 20 (Docket No. 1)

• **April 11, 2013:** Rainbow moves to intervene in the instant action.  *See* Mot. to Intervene (Docket No. 2).

• **May 9, 2013:** Rainbow files a Amended Motion to Intervene to name three additional defendant parties, including each duly-appointed IPUC commissioner in their official capacities respectively.  *See* Am. Mot. to Intervene (Docket No. 17).

• **July 2, 2013:** FERC files a Notice of Intent to Act, giving notice that it will initiate an enforcement action against IPUC under section 210(h)(2)(A) of PURPA.  *See* Opp. to Mot. to Am., p. 14 (Docket No. 38); *see also* Not. of Intent to Act, p. 2, attached as Ex. I to Proposed Am. Compl., ¶ 76 (Docket No. 36, Att. 12) ("Consistent with our initiation of enforcement proceedings in Murphy Flat and Grouse Creek, we believe it appropriate to also initiate an enforcement action pursuant to section 210(h)(2)(A) of PURPA, with respect to Rainbow Ranch.").

• **July 3, 2013:** FERC files the pending Motion for Leave to Submit Amended Complaint.  *See* Mot. to Am. (Docket No. 36).

• **July 5, 2013:** Rainbow withdraws its April 11, 2013 Motion to Intervene (Docket No. 2) and May 9, 2013 Amended Motion to Intervene (Docket No. 17).  *See* Not. of Withdrawal of Mots. to Intervene (Docket No. 37).

   b.   *FERC's Amended Complaint Does Not Prejudice IPUC*

IPUC's futility argument against FERC's amendment efforts rests upon IPUC's contention that Rainbow (the entity at the central focus of FERC's amended allegations and, according to IPUC, the entity that FERC is acting/litigating on behalf of) failed to timely seek judicial review of IPUC's rejection of the Agreements between Rainbow and Idaho Power.  In other words, IPUC contends that, independent of the Cedar Creek proceedings (and, thus, IPUC's acknowledged acceptance of FERC's interpretation of PURPA regulations vis à vis those proceedings), Rainbow is now attempting to piggy-back on the orders generated therefrom (regardless of their alleged substantive applicability here) and that Rainbow's attempt to do so

**MEMORANDUM DECISION AND ORDER - 10**

by amending FERC's Complaint is simply too little, too late.  *See* Opp. to Mot. to Am., pp. 14-19 (Docket No. 38).

In response, FERC first says that no new claims are being asserted via any amendment (rather, only additional facts buttressing existing claims), while further pointing out that (1) IPUC's arguments are premature and invite piecemeal litigation when considering that the arguments are already separately raised as defenses in IPUC's Answer to FERC's original Complaint (speaking to Murphy Flat and Grouse Creek – not Rainbow); and (2) as an "implementation" challenge (contrasted with  IPUC's "as applied" challenge retort), FERC's claim against IPUC is not barred by claim preclusion or state statutes of limitation.  *See* Reply in Supp. of Mot. to Am., pp. 3-10 (Docket No. 41).

IPUC's arguments against FERC's claims (at least as they apply to Rainbow) have the Court's attention – particularly when considering that although no new formal "claims" are being asserted in FERC's proposed Amended Complaint, the new allegations request that the Agreements between Rainbow and Idaho Power *now* be recognized.  *Compare* Compl., p. 20, ¶¶ 1-3 (Docket No. 1), *with* Proposed Am. Compl., p. 23, ¶¶ 1-3 (Docket No. 36, Att. 3).  Still, as FERC points out, the arguments offered in opposition to FERC's Amended Complaint (regarding Rainbow) appear to be similar – if not identical – to certain defenses raised within IPUC's Answer to FERC's original Complaint (regarding Murphy Flat and Grouse Creek). While it is not immediately clear whether IPUC's most recent arguments and its previously-alleged defenses align neatly to apply in the exact same respects, the action's current procedural backdrop will not operate as a test case for FERC's defenses moving forward.  Doing so could result in decisions upon related arguments in interrupted fragments at more expense (in time and

**MEMORANDUM DECISION AND ORDER - 11**

money) to all involved.  In contrast, allowing FERC's amendment to proceed at this time will not

prejudice IPUC, as IPUC retains the right to contest (through a motion to dismiss and/or motion

for summary judgment) some or all of the relief sought in a single, organized, procedural

setting.[5]  Idaho Power's interest in such matters cannot be ignored either; up until now, though, it

has been on the outside looking in. A ruling as a matter of law on the apparently novel issues

now before the Court will benefit from having a more complete record, developed over time with

each interested parties' input.

With all of this in mind, the undersigned finds that FERC's Motion for Leave to Submit

Amended Complaint (Docket No. 36) is granted, without prejudice to IPUC's ability to renew its

objections at a later date.

**C.      IPUC's Motion for Partial Stay of Proceedings (Docket No. 42)**

      1.      <u>Partial Stay/Abstention: The Standard</u>

Federal courts have a "virtually unflagging" obligation to adjudicate claims within their

jurisdiction. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817

(1976); *United States v. Morros*, 268 F.3d 695, 703 (9th Cir. 2001).  As such, "abstention is

permissible only in a few carefully defined situations with set requirements." *Morros*, 268 F.3d

at 703 (internal quotation marks omitted); *see also Colo. River*, 424 U.S. at 813 (noting that

abstention is proper only in "exceptional circumstances").  Here, IPUC suggests that

inefficiencies arguably created by simultaneous litigation in state and federal court (relating only

---

    [5]  Moreover, given the briefing schedule accompanying FERC's Motion for Leave to Submit Amended Complaint, IPUC had no ability to address FERC's responses to the substantive legal challenges to the requested amendment.  For example, the undersigned would want to hear IPUC's perspective on FERC's argument (and supporting case law) that its claim is not an "as-applied" challenge, but, instead, an "implementation" challenge. *See, e.g.*, Reply in Supp. of Mot. to Am., pp. 6-8 (Docket No. 41).  If it chooses, as it presumably will, to file its own dispositive motion attacking FERC's requested relief, IPUC will have such an opportunity.

**MEMORANDUM DECISION AND ORDER - 12**

to Grouse Creek proceedings) can be avoided by invoking the abstention doctrines set forth in

*Buford v. Sun Oil Co.*, 319 U.S. 315 (1943) and/or *Colorado River*, 424 U.S. at 817. *See* Mem.

in Supp. of Mot. to Stay, pp. 7-12 (Docket No. 42, Att. 1).[6]

> The Ninth Circuit has concisely summarized the *Buford* abstention doctrine:

> *Buford* abstention [ ] arose from a case involving the Texas Railroad Commission. In *Buford*, an oil company filed suit in federal court to attack the validity of a permit [ ] the Commission granted to Buford. The permit allowed Burford to drill four wells in an East Texas oilfield. The Supreme Court held that although the federal court had diversity jurisdiction over this "thorny" regulatory controversy, it properly declined to rule on the merits. After a long exegesis on the complexities of Texas oil law, the Court concluded that "[a]s a practical matter, the federal courts can make small contribution to the well organized system of regulation and review which the Texas statutes provide" and that "[d]elay, misunderstanding of local law, and needless federal conflict with the State policy [ ] are the inevitable product of this double system of review."

> *Buford* allows courts to "decline to rule on an essentially local issue arising out of a complicated state regulatory scheme." Its application requires[,] first, that the state has chosen to concentrate suits challenging the actions of the agency involved in a particular court; second, that federal issues could not be separated easily from complex state law issues with respect to which state courts might have special competence; and third, that federal review might disrupt state efforts to establish a coherent policy.

*Morros*, 268 F.3d at 704-05 (footnotes and citations omitted).

---

[6] There is some authority to suggest that a threshold determination must be made before any of the specific abstention doctrines are applied. *See Commercial Cas. Ins. Co. v. Swarts, manning & Associates, Inc.*, 616 F. Supp. 2d 1027, 1032-33 (D. Nev. 2007). Specifically, for abstention to ever be appropriate, there must be a parallel or substantially similar proceeding in state court. *See Security Farms v. Int'l Broth. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1099 (9th Cir. 1997) ("[I]nherent in the concept of abstention is the presence of a pendent state action in favor of which the federal court must, or may, abstain."). An exact parallel is not required; "[i]t is enough if the two proceedings are substantially similar." *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Commercial*, 616 F. Supp. 2d at 1032-33 (quoting *New Beckley Min. Corp. v. Int'l Union, United Mine Workers of America*, 946 F.2d 1072 (4th Cir. 1991)). There is no dispute here that the Grouse Creek matter pending before the Idaho Supreme Court and the related allegations raised here in FERC's original Complaint and proposed Amended Complaint are substantially similar for abstention principles to apply.

**MEMORANDUM DECISION AND ORDER - 13**

The Ninth Circuit has also recently summarized the *Colorado River* doctrine and related

Circuit jurisprudence:

> In *Colorado River* . . . the federal government brought suit against water users in federal court, seeking a declaration of water rights in certain rivers and tributaries in Colorado.  Colorado had previously established seven water districts to adjudicate water rights in ongoing state court proceedings.  After the government filed its suit in federal court, several of the defendants in that case filed an application joining the government as a party in the state court proceedings for the relevant water district. The district court then dismissed the government's federal suit in light of the ongoing state court proceedings.  On appeal, the Supreme Court held that although none of the traditional abstention doctrines applied, "considerations of [w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," justified dismissal of the federal suit.  The Court noted several factors that supported dismissal, relying particularly on the "highly interdependent" relationship between the claims in the state and federal proceedings and the federal policy, embodied in the McCarran Amendment, of avoiding piecemeal adjudication of water rights.
>
> The Court has carefully limited *Colorado River*, emphasizing that courts may refrain from deciding an action for damages only in "exceptional" cases, and only "the clearest of justifications" support dismissal.  In *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, the Court held that no exceptional circumstances justified the district court's stay of an action to compel arbitration under the Federal Arbitration Act.  The Court noted that although a state court suit involving the underlying claims was pending when the federal suit was filed, the federal suit did not increase the risk of piecemeal litigation; substantial progress had already been made in the federal suit; federal law provided the rule of decision on the merits of the case; and there was substantial doubt as to whether the state court could issue the remedy sought in federal court.
>
> To decide whether a particular case presents the exceptional circumstances that warrant a *Colorado River* stay or dismissal, the district court must carefully consider "both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise."  Drawing from *Colorado River*, *Moses H. Cone*, and subsequent Ninth Circuit cases, we have recognized eight factors for assessing the appropriateness of a *Colorado River* stay or dismissal: (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect

**MEMORANDUM DECISION AND ORDER - 14**

the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 978-79 (9th Cir. 2011) (footnotes and citations omitted).[7]  "These factors are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a mechanical checklist."  *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1257 (9th Cir. 1988).  Nonetheless, "[a]ny doubt as to whether a factor exists should be resolved against a stay."  *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990).

      2.    <u>Analysis: A Partial Stay is Appropriate for Claims Relating to Grouse Creek</u>

At the outset, it bears mentioning that IPUC's Motion for Partial Stay of Proceedings requested a limited stay of this case until the Idaho Supreme Court resolved Grouse Creek's September 7, 2011 (amended on October 19, 2012) appeal.  According to IPUC, the stay's duration would last approximately 65-80 days from the August 28, 2013 oral argument – the amount of time, presumably, the Idaho Supreme Court would need to issue a decision on the merits.  *See* Mem. in Supp. of Mot. to Stay, pp. 5 & 8 (Docket No. 42, Att. 1).  However, to date, the Idaho Supreme Court has not issued the anticipated opinion, and more time has already passed than IPUC's original representation about the expected decision time frame.  Hence, the passage of time has taken out some of the starch in IPUC's stay arguments, rendering the current consideration of them less pressing while the Idaho Supreme Court's decision is no-doubt on its way.  Even so, an interim stay (if only for a brief period of time, as may transpire) is warranted here.

---

[7]  Although a court may either stay or dismiss a case or claims under *Colorado River*, the Ninth Circuit generally requires a stay rather than a dismissal.  *See R.R. St. & Co.*, 656 F.3d at 978 n.8.

**MEMORANDUM DECISION AND ORDER - 15**

It is true that FERC's and Grouse Creek's parallel claims against IPUC speak to the latter's alleged failure to follow PURPA – a federal statute.  Yet, part and parcel with such allegations is the question of whether a "legally enforceable obligation" exists under 18 C.F.R. § 292.304(d).  Such a determination – broadly expressed throughout FERC's pleadings in terms of federal law – necessarily involves aspects of state law.  *See, eg.*, *West Penn Power Co.*, 71 FERC P 61153, 61495 (May 8, 1995) ("Our regulations expressly permit rates in long-term QF contracts to be based on avoided costs as of the time a legally enforceable obligation is incurred. It is up to the States, not [FERC] to determine the specific parameters of individual QF power purchase agreements, including the date at which a legally enforceable obligation is incurred under State law.") (footnote omitted).   Why this Court can't weigh in on such matters of state law – as it routinely does when handling cases sitting in diversity – is unclear from IPUC's briefing.   So, while Idaho may have established a state administrative scheme for addressing PURPA claims flowing from IPUC orders, the resolution of FERC's federal claim here (even though implicating an interpretation of state law) is not permanently knotted into aspects of state law over which state courts have particular expertise.  As a result, *Burford* does not clearly apply to warrant that this action be stayed.

This is not to say that whatever the Idaho Supreme Court decides in relation to Grouse Creek should be disregarded by this Court.  That is simply not the case, particularly in the event the Idaho Supreme Court has the occasion to speak to pertinent state law, especially matters of first impression, when resolving issues now before it on appeal.  Such interest, by itself, may not be enough to stay this action.  However, that changes when understanding that (1) adjudicating this claim may result in a duplication of efforts regarding the upholding of any legally enforceable obligation; (2) the state court was the first to exercise jurisdiction over the dispute

**MEMORANDUM DECISION AND ORDER - 16**

regarding Grouse Creek and, naturally, the state court action has progressed more than this federal action; (3) Grouse Creek's claims are enforceable under state law and can be adequately considered and protected by the Idaho Supreme Court; (4) no improper forum shopping has taken place; and (5) resolution of Grouse Creek's appeal could be independently dispositive of the substantive issues concerning Grouse Creek here.  These realities combine under the applicable *Colorado River* factors to weigh in favor of a stay.[8]

With all of this in mind, the undersigned finds that IPUC's Motion for Partial Stay of Proceedings (Docket No. 42) is granted until January 31, 2014 or the Idaho Supreme Court issues a decision on Grouse Creek's appeal – whichever occurs first.[9]

## III. <u>ORDER</u>

Based on the foregoing, it is HEREBY ORDERED that:

1.      Idaho Power's Motion to Intervene (Docket No. 19) is GRANTED;

2.      FERC's Motion for Leave to Submit Amended Complaint (Docket No. 36) is GRANTED; and

///

///

///

///

----

[8] *Colorado River's* first two elements are not relevant here – the dispute does not involve a specific piece of property, and the respective fora (state and federal) are both located in Boise, Idaho.

[9] In the event the Idaho Supreme Court does not issue a decision before January 31, 2014, the Court anticipates scheduling a telephonic conference with all parties to discuss the action's status, with the intended course of the Court at this time to move forward on all fronts with the federal lawsuit.

**MEMORANDUM DECISION AND ORDER - 17**

3.      IPUC's Motion for Partial Stay of Proceedings (Docket No. 42) is GRANTED

until January 31, 2014 or the Idaho Supreme Court issues a decision on Grouse Creek's appeal –

whichever occurs first.



DATED:  **December 2, 2013**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 18**